**IT IS ORDERED as set forth below:**

**Date: August 30, 2017**



_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| RANDAL J. WILLOUGHBY | ) | CASE NO. 16-57059-wlh |
| | ) | |
| Debtor. | ) | |
| | ) | |
| WORLDWIDE EQUIPMENT | ) | |
| OF SOUTH CAROLINA, INC. | ) | |
| | ) | ADVERSARY PROCEEDING |
| Plaintiff, | ) | |
| | ) | NO.: 16-5164-wlh |
| v. | ) | |
| | ) | |
| RANDAL J. WILLOUGHBY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Worldwide Equipment of South Carolina, Inc. ("Worldwide"), the plaintiff in this adversary proceeding, seeks a determination under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6)

1

that a debt allegedly owed to it by Randal J. Willoughby, the defendant, is non-dischargeable. Currently before the Court are Worldwide's Motion for Summary Judgment [Doc. 19] and Willoughby's Cross-Motion for Summary Judgment [Doc. 20], both seeking summary judgment on all claims.  For the reasons given below, the Court denies Worldwide's motion as to all of its claims, and grants Willoughby's motion as to all claims.

I.     Facts

   A.     Undisputed Facts

At all relevant times, Willoughby was the sole shareholder and president of Southern Fire, a Georgia corporation.  Southern Fire was in the business of upfitting trucks for use as fire trucks. Willoughby controlled payments made by Southern Fire.

Worldwide is in the business of selling Kenworth trucks and chassis.  In 2012, Southern Fire began ordering chassis from Worldwide on a consignment basis. Worldwide would deliver chassis to Southern Fire which would upfit the chassis for fire departments.  Worldwide would retain title to the chassis, as evidenced by Worldwide's retaining the Manufacturer's Statement of Origin ("MSO").  Willoughby understood and agreed that although the chassis was being delivered, ownership of the chassis remained with Worldwide.

From 2012 to 2015, Worldwide delivered and received payment for over 10 chassis. Worldwide did not necessarily know when one of its chassis was sold, but in each case, Worldwide held the MSO until payment was made by Southern Fire to Worldwide.  Worldwide then executed the MSO and transferred it to the customer directly or to Southern Fire.  If Southern Fire received the title, it would execute the MSO to transfer title to the purchaser.

On June 8, 2015, Southern Fire submitted a bid to the City of Rome, Georgia ("City of Rome") to sell a fire tanker.  On June 25, 2015, Southern Fire received notice that it was awarded the bid.  On or around January 19, 2016, Willoughby, through Southern Fire, placed an

2

order with Worldwide for a 2017 Kenworth T370, VIN 2NKHHJ8X3HM127745 (the "Chassis"). At the time, Southern Fire was facing cash flow problems. Worldwide delivered the Chassis to Southern Fire and retained the MSO. Worldwide states it provided Southern Fire an invoice in the amount of $81,031. No invoice from Worldwide is in the record and Willoughby states he does not recall Southern Fire receiving an invoice.[1] In any event, it is undisputed that Southern Fire owed $81,031 to Worldwide for the Chassis and the entire amount remains unpaid.[2] Neither party submitted any writings documenting the transaction or outlining how proceeds from the sale of the Chassis were to be used.

Southern Fire completed the upfitting in accordance with its bid to the City of Rome and the City of Rome picked up the Chassis. Southern Fire provided the City of Rome an invoice in the amount of $218,106.00 for the completed fire truck. On February 25, 2016, the City of Rome remitted full payment by check number 285624 payable to Southern Fire (the "Proceeds"). Southern Fire deposited the Proceeds into its bank account at Hamilton State Bank on March 10, 2016. On March 16, 2016, Willoughby used $91,149 of the Proceeds to pay Worldwide for a different chassis. Some of the Proceeds – $3,900 – were paid by Southern Fire to Willoughby as a dividend. On April 10, 2016, United Community Bank froze Southern Fire's checking account and seized $131,000 from the account.

On April 22, 2016, Willoughby filed a petition under Chapter 7 of the Bankruptcy Code, Case No. 16-57059. On May 5, 2016, Southern Fire filed a petition under Chapter 7 of the Bankruptcy Code, Case No. 16-20898. On October 18, 2016, in the Southern Fire bankruptcy case, the City of Rome commenced Adversary Proceeding No. 16-02058 against Worldwide related to the MSO for the Chassis. In its complaint, the City of Rome claimed that as a buyer in

---

[1] An invoice from Kenworth to Worldwide is in the record.
[2] The Complaint sought recovery of over $160,000 for two chassis. One chassis has been recovered by Worldwide, so it is seeking summary judgment on only one chassis for which it is owed $81,031.

3

the ordinary course, it took free of Worldwide's interest in the Chassis. As settlement for that adversary proceeding, Worldwide transferred the MSO for the Chassis to Southern Fire, who subsequently transferred the MSO to the City of Rome. On March 9, 2017, that adversary proceeding was dismissed with prejudice. This Adversary Proceeding was filed by Worldwide to determine that Willoughby was liable to Worldwide for the unpaid invoice and that such debt was non-dischargeable.

### B. Alleged Disputed Facts

Despite agreement on a number of facts, other issues remain disputed. First, the parties dispute the precise terms on which Southern Fire was to pay for each chassis. Worldwide states in its Plaintiff's Statement of Material Facts ("Material Facts"), "Upon the sale of a chassis to a fire department, Southern Fire would pay the proceeds from the sale to Worldwide for the particular chassis." Worldwide further states in its Material Facts, "Willoughby knew that Southern Fire did not have the authority or the consent of Worldwide to sell, transfer, or otherwise dispose of the Chassis and not remit the Proceeds to Worldwide." Willoughby denies both statements, explaining, "Occasionally … Southern Fire would be unable to pay Worldwide from the proceeds and thus would have to pay Worldwide from the sale of another truck."[3] Willoughby explains in his Response to Material Facts that he knew Southern Fire was supposed to pay the Proceeds from the sale of the Chassis to the Plaintiff, but Southern Fire had floated payments and paid the Plaintiff late before. Further, Southern Fire paid Worldwide $91,149.00 from the Proceeds of the chassis.

Next, the parties dispute Willoughby's knowledge of Southern Fire's ability to pay when Willoughby placed the order for the Chassis. In its Material Facts, Worldwide states, "When Willoughby placed the order for the Chassis with Worldwide, he knew that Southern Fire would

---

[3] Defendant's Response to Plaintiff's Statement of Undisputed Facts ¶ 9 [Doc. 20, pp. 13–15] ("Response to Material Facts").

4

be unable to pay Worldwide for the Chassis from the proceeds." Willoughby denies this in his Response to Material Facts, explaining that there was a <u>possibility</u> Southern Fire would be unable to pay Worldwide for the Chassis from the Proceeds of the sale of the 2017 Kenworth T370. Willoughby concedes, however, that for a year or two, Southern Fire had been "juggling" to keep up with insufficient cash flow, often having to pay Worldwide for chassis with proceeds from the sale of a different chassis.[4] But Willoughby stated in his deposition that it was not "unlikely" the Chassis would be paid for from proceeds. It is unclear whether Worldwide knew that Southern Fire often paid for a particular chassis with proceeds from Southern Fire's sale of a different chassis.

## II.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The substantive law applicable to the case determines which facts are material. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. <u>Id.</u>

The party moving for summary judgment has the burden of showing no genuine disputes exist as to any material facts. <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993). Once this burden is met, the burden shifts to the nonmoving party to establish a genuine dispute of a material fact. <u>Hairston</u>, 9 F.3d at 918. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, … or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

---

[4] Deposition of Randal J. Willoughby at 131:4–19 [Doc. 21].

fact." Fed. R. Civ. P. 56(c)(1).[5] When reviewing a motion for summary judgment, a court must examine the evidence and undisputed facts in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Hairston, 9 F.3d at 918; see also Wilkerson v. Seymour, 736 F.3d 974, 974 n.1 (11th Cir. 2013).

The standard for the grant of summary judgment is not affected by the filing of cross-motions for summary judgment. "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standards." 10A C. Wright, A. Miller & M. Cane, Fed. Prac. & Proc., Sec. 2720 at 335-36 (3rd Ed. 1889). Cross-motions can, however, illuminate whether there is a factual dispute or where the parties generally agree as to the material facts or the controlling legal theories. See United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984); Strickland v. Alexander, Civ. Act. No. 1-12-CV-02735-MHS (Dist. Ct. N.D. Ga. Sept. 8, 2015).

### III. Law

Determining the dischargeability of a debt typically involves two steps. The first step is to determine whether a debt exists. If the debtor owes a debt to the plaintiff, the second step is to determine the nature of the debt—whether it is dischargeable or non-dischargeable. Hatfield v. Thompson (In re Thompson), 555 B.R. 1, 8 (10th Cir. BAP 2016); Stanbrough v. Valle (In re Valle), 469 B.R. 35, 43 (Bankr. D. Idaho 2012). For Worldwide to meet the summary judgment standard, therefore, the undisputed facts and applicable law must establish *both* (1) a debt to Worldwide for which Willoughby is liable and (2) the non-dischargeability of the debt under

---

[5] The Court's Local Rules on motions for summary judgment require (1) that the movant file a statement of undisputed material facts and (2) that the respondent file a response to the statement of material facts. BLR 7056–1(a)(1) & (a)(2). Willoughby filed one document (Doc. 20) containing a Cross-Motion for Summary Judgment; a memorandum supporting the cross-motion and opposing Worldwide's motion for summary judgment; a Response to Plaintiff's Statement of Undisputed Facts; and a Statement of Additional Undisputed Facts. Worldwide did not respond to Willoughby's cross-motion for summary judgment and failed to controvert anything in Willoughby's Statement of Additional Undisputed Facts. Under the Court's Local Rules, "All material facts contained in the moving party's statement [of undisputed material facts] that are not specifically controverted in respondent's statement shall be deemed admitted." BLR 7056-1(a)(2).

6

Section 523(a)(2)(A), (a)(4), or (a)(6). Conversely, Willoughby is entitled to summary judgment if the undisputed facts and applicable law establish *either* (1) Willoughby owes no debt to Worldwide or (2) any debt Willoughby owes to Worldwide is not excepted from discharge under Section 523(a)(2)(A), (a)(4), or (a)(6).

"The establishment of the debt is determined through the adjudication of the underlying claim under applicable non-bankruptcy law." Van-Voegler v. Myrtle (In re Myrtle), 500 B.R. 441, 450 (Bankr. W.D. Va. 2013) (citing In re Valle, 469 B.R. at 43); see also Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20, 120 S. Ct. 1951, 1955 (2000) (stating that "[t]he 'basic federal rule' in bankruptcy is that state law governs the substance of claims") (quoting Butner v. United States, 440 U.S. 48, 57, 99 S. Ct. 914, 919 (1979)). While it is undisputed that Southern Fire is liable for its failure to pay $81,031 to Worldwide for the Chassis, Willoughby argues he is not personally liable for the $81,031. Worldwide concedes that the $81,031 debt arose from transactions with Southern Fire alone and that Willoughby was not a party in his individual capacity.

Worldwide argues that Willoughby is personally liable for the $81,031 because under Georgia law, "[a]n officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, [and] an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or cooperated therein." Cherry v. Ward, 204 Ga. App. 833, 834 (1992) (brackets in original) (quoting Smith v. Hawks, 182 Ga. App. 379, 385 (1987)). This statement of the law is accurate, but recognizes the corporation must have committed a tort, which the officer directed or in which he participated. A breach of contract by a company does not form a basis for officer liability.

Worldwide explains Willoughby's tort liability as follows:

7

> Willoughby acknowledges that he was the president and sole share holder [sic] and ultimately responsible for payments made by Southern Fire. Southern Fire acted through Willoughby. Willoughby made promises to Worldwide for purposes of obtaining the Chassis. He induced Worldwide to provide the Chassis with the promise that Worldwide would be paid from the sale of the Chassis. He knew when Southern Fire ordered the Chassis that Southern Fire would not be able to pay Worldwide from the sale of the Chassis. Instead of paying Worldwide as agreed, Willoughby tortuously [sic] failed to remit the funds to Worldwide. There is no genuine issue of material fact that Willoughby is liable to Worldwide for the Debt.

Memorandum In Support of Plaintiff's Motion for Summary Judgment at 8 [Doc. 19-3] ("Plaintiff's Memorandum").

The above excerpt from Plaintiff's Memorandum contains language suggestive of fraud, refers (without elaboration) to a tortious failure to remit, and concludes that Willoughby's personal liability is not subject to a genuine issue of material fact. But it does not identify any particular tort for which Southern Fire or Willoughby is liable. Rather, Worldwide concludes its liability argument with the above and immediately proceeds to argue why the liability is non-dischargeable under Section 523(a)(2)(A), (a)(4), and (a)(6).

Plaintiff's argument conflates liability with non-dischargeability. Section 523(a) is not a source of liability. See Zacharakis v. Melo (In re Melo), 558 B.R. 521, 561 (Bankr. D. Mass. 2016); Walker v. Van Winkle (In re Van Winkle), 562 B.R. 671, 678 (Bankr. E.D. Ky. 2016). Section 523(a)(2)(A) is not a cause of action for the tort of fraud. Section 523(a)(4) is not a cause of action for the tort of fraud or defalcation while acting in a fiduciary capacity. Section 523(a)(6) is not a cause of action for the tort of willful and malicious injury. Rather, Section 523(a) provides bankruptcy causes of action to determine the dischargeability of debts for which debtors are liable under non-bankruptcy law. In other words, causes of action under Section 523(a) merely characterize liabilities owed under other law.

The question for the Court is what underlying claim has been pled against Willoughby. While Worldwide has not specifically referenced the Georgia tort of fraud, the Court notes Worldwide's Section 523(a)(2)(A) claim is based on fraud. The elements of the Georgia tort of fraud are essentially the same as the elements of a Section 523(a)(2)(A) claim based on fraud. Wilson Family Foods, Inc. v. Brown (In re Brown), 457 B.R. 919, 924 n.1 (Bankr. M.D. Ga. 2011); Lewis v. Lowery (In re Lowery), 440 B.R. 914, 924 (Bankr. N.D. Ga. 2010). Proving fraud under Section 523(a)(2)(A) necessarily proves fraud under Georgia law, and vice versa. The Court, therefore, will consider Willoughby's liability for fraud.

While a debt for fraud may also be non-dischargeable under Section 523(a)(4) as a debt for fiduciary fraud and under Section 523(a)(6) as a debt for a willful and malicious injury, see, e.g., Husky Int'l Elecs., Inc. v. Ritz, 136 S. Ct. 1581, 1588 (2016), Worldwide's Section 523(a)(4) and (a)(6) claims do not appear to be based on fraud. The Section 523(a)(4) claim is for fiduciary defalcation rather than fiduciary fraud. This suggests Worldwide has in mind liability for some other, non-fraud tort that is not pled or identified. Similarly, Worldwide has not pled or identified any underlying claim other than fraud to which Section 523 (a)(6) applies. The case on which Worldwide relies, Monson v. Galaz (In re Monson), 661 F. App'x. 675 (11th Cir. 2016), is not applicable. The question before the Court in Monson was not whether the debtor was liable to the plaintiff but whether the contractual debt for which the debtor was liable was non-dischargeable. In the Monson case, the debtor's liability was based on an express contract. The debtor's contractual liability to the plaintiff was held non-dischargeable because of the knowledge and intent of the debtor at the time the contract was breached. Willoughby has no liability to Worldwide based on Southern Fire's contract with Worldwide. Rather, Willoughby's liability, if any, must be based on a tort which either he committed directly or which he directed Southern Fire to commit. Worldwide has alleged no such tort other than fraud.

9

To the extent any of Worldwide's claims in this case rely on Willoughby's liability for any tort besides fraud, Worldwide has not met its burden as a movant for summary judgment or respondent to a motion for summary judgment. Worldwide has not alleged or pointed to the record, suggested, or shown as a matter of law, liability for any tort other than fraud or that disputed issues of fact remain with respect to liability on any other theory. The Court will therefore consider Worldwide's claim against Willoughby to be one for the Georgia tort of fraud. Willoughby's motion for summary judgment as to liability on any theory other than fraud is granted.

To prove fraud under Georgia law, a plaintiff must show: "(1) a false representation made by the defendant; (2) which the defendant knew was false; (3) made with an intent to deceive the plaintiff; (4) justifiable and detrimental reliance by the plaintiff on such representation; and (5) damages suffered by the plaintiff as a result." Lowery, 440 B.R. at 924 (cites omitted). Worldwide argues,

> When Southern Fire requested the chassis from Worldwide, Willoughby knew that Southern Fire was in such financial distress that Southern Fire would not be able to pay Worldwide from the sale of the Chassis to the City of Rome, Georgia. Southern Fire falsely represented it would pay Worldwide from the sale of the Chassis. Based on the course of history between the parties, Worldwide reasonably relied on the promises that it would be paid from the Proceeds and actually delivered the Chassis to Southern Fire. Instead of causing the Proceeds to be paid to Worldwide as agreed, Willoughby caused Southern Fire to not pay Worldwide. As a result, Worldwide sustained a loss as a result of Willoughby's representation that it would be paid from the sale of the Chassis.

Plaintiff's Memorandum at 9.

In the above excerpt, Worldwide states that Southern Fire "falsely represented it would pay Worldwide from the sale of the Chassis." Worldwide, however, points to no evidence of a representation by Southern Fire or Willoughby that it would pay Worldwide from the sale of the

Chassis. Neither Worldwide's Material Facts nor Worldwide's supporting affidavit[6] mention a false representation. Rather, the Material Facts and Kelley Affidavit state that Willoughby, through Southern Fire, submitted to Worldwide a purchase order for the Chassis[7] and "never told Worldwide that it would not be paid from the sale of the Chassis."[8] So while Plaintiff's Memorandum argues that Willoughby made an affirmative misrepresentation, Worldwide's factual allegations and evidence show no affirmative misrepresentation. Worldwide's allegations are that Willoughby failed to disclose that Worldwide would be unable to perform.

Under Georgia law, "[m]ere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action." O.C.G.A. § 51-6-2(a). But, "[s]uppression of a material fact *which a party is under an obligation to communicate* constitutes fraud." O.C.G.A. § 23-2-53 (emphasis added).[9] The Georgia courts have consistently held that, "[a]n obligation to disclose must exist before a party may be held liable for fraud based upon the concealment of material facts." William Goldberg & Co. v. Cohen, 219 Ga.App. 628, 631 (1995). If the transaction at issue is nothing "other than an arms length transaction between two professionals and there is no evidence that any special or confidential relationship existed to give rise to a duty to disclose," then there can be no fraudulent concealment. Am. Demolition, Inc. v. Hapeville Hotel Ltd. P'ship, 202 Ga.App. 107, 109 (1991). More recently, the Georgia court has reiterated its position as follows: "Georgia law is abundantly clear that '[a]n obligation to disclose must exist before a party may be held liable for fraud based upon the concealment of material facts … In the absence of a confidential relationship, no duty to disclose exists when

---

[6] Affidavit of Robert Kelley in Support of Plaintiff's Motion for Summary Judgment [Doc. 19-13] ("Kelley Affidavit").
[7] Material Facts ¶ 16; Kelley Affidavit ¶ 12.
[8] Material Facts ¶ 19; Kelley Affidavit ¶ 13.
[9] *See also* 14 GA. JUR. PERSONAL INJURY & TORTS § 17:5 ("Misrepresentation of a material fact can be demonstrated by showing either that a material fact was, in fact, misrepresented or that a material fact was concealed by defendants; in the latter situation, however, the plaintiff must further allege that a fiduciary or confidential relationship existed such that the defendants had a duty to disclose the material fact in question.").

parties are engaged in arms-length business negotiations; in fact, an arms-length relationship by its nature excludes a confidential relationship.'" (cites omitted).  Infrasource, Inc. v. Hahn Yalena Corp., 272 Ga.App. 703, 705 (2005).  See also Gustafson v. Plyler, 2016 WL 3128514 (N.D. Ga. Mar. 14, 2016); DaimlerChrysler Motors Company, LLC v. Clemente, 294 Ga.App. 38 (2008); Lilliston v. Regions Bank, 288 Ga.App. 241 (2007).  The Georgia code O.C.G.A. § 23-2-58 defines a confidential relationship as one "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc."  Parties negotiating the sale of a business or otherwise engaged in arms-length business negotiations are not in a confidential relationship. See Infrasource, 272 Ga.App. at 705; Kingdom Ins. Grp., LLC v. Cutler & Assoc., Inc., 2011 WL 2144791 *7 (M.D. Ga. May 31, 2011).

     Worldwide has introduced no evidence of any obligation on Willoughby's part to communicate the source of payment to Worldwide.  The record contains no written obligation of Southern Fire to segregate proceeds from sales or to make payments only with Proceeds.  Obviously, Southern Fire and Willoughby knew Worldwide would not transfer title without payment, and they presumably knew the Proceeds were the most likely source of payment, but there was no requirement that Proceeds be the only source of payment and historically Southern Fire had paid Worldwide from other sources of funds.  Worldwide and Southern Fire were in an arms-length commercial relationship for the sale of truck chassis.  No statute or contract required the relationship to be anything other than arms-length.  Therefore, Southern Fire, and thus Willoughby, had no duty to disclose how the Proceeds of the Chassis would be used or how Worldwide would be paid.  No claim for fraudulent concealment exists.

To the extent Worldwide's claim is that Southern Fire and Willoughby misrepresented their ability or intent to perform, "[N]ormally, fraud cannot be predicated on statements which are in the nature of promises as to future events. However, an exception to the general rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place." Gibson Tech. Servs., Inc. v. JPay, Inc., 327 Ga. App. 82, 84 (2014) (quoting BTL COM Ltd. v. Vachon, 278 Ga. App. 256, 258 (2006)). Even here, though, the misrepresentation must be affirmative. Silence, when there is no obligation to speak, is not fraud. See Oman Family Trust v. Hilsman (In re Hilsman), 2017 WL 3438912 (Bankr. M.D. Ga. Aug. 9, 2017).

Furthermore, Worldwide has not pointed the Court to evidence from which it could conclude that Southern Fire and Willoughby had no intent to perform at the time it ordered the Chassis in January 2016. Both Willoughby and Worldwide rely on the following exchange from the Deposition of Willoughby.

> Counsel: So at this point where you paid Worldwide for this chassis, you wouldn't have sufficient cash flow likely to pay Worldwide for the City of Rome chassis?
>
> Willoughby: That happened for a reason.
>
> Counsel: And that happened for a reason, you said?
>
> Willoughby: Yes.
>
> Counsel: And what was that reason?
>
> Willoughby: Because I had the past chassis to pay for. I'm trying to juggle and keep things – keep things flowing.
>
> Counsel: And when you placed the order for the chassis with Worldwide for this City of Rome chassis, did you know at that time that you were juggling things?
>
> Willoughby: Hell, I'd been juggling for a year or two.

13

    Counsel:    And did you – did it seem unlikely that you'd be able to pay for the City of Rome chassis –

    Willoughby:    No.

    Counsel:    – at the time, from the City of Rome proceeds?

    Willoughby:    Oh, possibility, yes.

Deposition of Randal J. Willoughby Tr. at 131:4–25 [Doc. 21].

    The additional undisputed facts are that Worldwide and Southern Fire did business over the course of several years consisting of many transactions. In all previous transactions, Southern Fire had paid Worldwide for the chassis, even if the payment came from a source other than the precise chassis sold. It is also undisputed that in April 2016, Southern Fire had $130,000 in its bank account at the time United Community Bank froze its account. Thus, the undisputed facts show that funds were available to make the payment on this Chassis had it not been for the freezing of funds by United Community Bank. Whether viewed in the light most favorable to Worldwide or the light most favorable to Willoughby, the Court cannot conclude from the undisputed facts that Southern Fire and thus Willoughby placed the order for the Chassis knowing Southern Fire would be unable to pay Worldwide for it. Willoughby's acknowledgement that there was a "possibility" that Southern Fire would be unable to pay for the Chassis with the Proceeds of the sale of the Chassis to the City of Rome is not sufficient to support Worldwide's motion for summary judgment or to overcome Willoughby's motion for summary judgment. At this same deposition, Willoughby responded, "No" to the question of whether it seemed unlikely that Southern Fire would be unable to pay for the City of Rome chassis.

    Worldwide has pointed the Court to no evidence of a representation made by Willoughby or Southern Fire on which a claim of fraud can be based. No evidence has been presented that,

14

even if Southern Fire and Willoughby knew the Proceeds of the sale of the Chassis to the City of Rome would not be used to pay Worldwide, either were obligated to disclose that information to Worldwide. There are also no disputed facts sufficient to support a judgment for Worldwide that Southern Fire and Willoughby had a present intention, when the Chassis was ordered from Worldwide, not to make payment. Thus, summary judgment is granted for Willoughby on any liability for the unpaid invoice from Worldwide to Southern Fire.

### IV.     Conclusion

For the foregoing reasons, the Court denies Worldwide's Motion for Summary Judgment as to all of Worldwide's claims and grants Willoughby's Cross-Motion for Summary Judgment as to all claims.

### ### END OF ORDER ###

**DISTRIBUTION LIST**

Charles N. Kelley, Jr
Kelley & Clements LLP
PO Box 2758
Gainesville, GA 30503-2758

Randal J. Willoughby
1428 Old Canton Road
Ball Ground, GA 30107

Brian S. Limbocker
Limbocker Law Firm, LLC
Bldg. 800 - Suite 140
2230 Towne Lake Parkway
Woodstock, GA 30189